**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES**, et al., ex rel., **LUVETTA COMPTON**, et al., <br><br> Plaintiffs, <br><br> *v.* <br><br> **HCR MANORCARE, INC.**, et al., <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 16-0851-KSM** |

**MEMORANDUM**

**Marston, J.**                                                                                           **April 17, 2026**

In this consolidated qui tam action, the United States and Relators Luvetta Compton and

James Bonner bring claims under the Federal False Claims Act ("FCA"), state statutory

equivalents, and federal and state common law against numerous Defendants[1] that allegedly

provided "nonexistent, grossly substandard" care at nursing homes across the country and

fraudulently sought reimbursement from the federal government as though proper care had been

provided.  (Case No. 16cv851 ("*Compton* Action), Doc. No. 73 at 2–3 (United States'

Consolidated Complaint in Intervention as to four facilities); *Compton* Action Doc. No. 76 at 6–

16 (Relators' Consolidated Amended Complaint as to additional facilities); Case No. 17cv2860

("*Bonner* Action"), Doc. No. 59 (United States' Complaint in Intervention).)  Defendant

ProMedica Health System, Inc. ("ProMedica") moves to unseal all docket entries filed in both

---

[1] Defendants include numerous individual facilities, along with multiple corporate entities, each of which either oversaw one or more of the subject facilities and/or is the parent company or successor in interest to one or more of the other Defendants.  The non-facility-specific corporate entities are:  (1) HCR ManorCare, Inc., (2) ProMedica Health System, Inc., (3) ProMedica Employment Services, LLC, formerly known as Heartland Employment Services, LLC, (4) Manor Care, Inc., (5) HCR Manor Care Services, LLC, and (6) Manor Care Health Services, Inc.  (*See* Doc. No. 73 at 1–2; Doc. No. 76 at 40–47; Doc. No. 81 at 1–18.)

actions.  For the reasons discussed below, the motion is granted; however, the United States will be given an opportunity to show that there is good cause for limited redactions of the briefs that it filed in support of its motions for extension.

## I.    BACKGROUND

Although now consolidated, the *Compton* and *Bonner* Actions were initially filed as two separate actions and were just two among many similar cases filed in this District and investigated by the United States for possible intervention.  As required by the FCA, Relators' initial Complaints and the accompanying dockets were sealed for 60 days while the government's investigation was underway.  The investigation stretched well beyond the initial 60-day period, however, lasting more than nine years in the *Compton* Action and more than eight years in the *Bonner* Action.  During that time, the United States filed nearly 50 ex parte motions to extend the seal and the deadline by which it was to decide whether to intervene.  The Court granted those motions, and they too were filed under seal.

On April 17, 2025, the United States filed notice of its intent to intervene in each action. (*Compton* Action, Doc. No. 63 (noting only partial intervention); *Bonner* Action, Doc. No. 52.)[2] On September 2, 2025, the two cases were consolidated under the docket for the *Compton* Action, which was the earlier filed case (*Compton* Action, Doc. No. 75), and the United States' complaints in intervention and the Relators' Amended Consolidated Complaint were served on Defendants and made available on the public dockets (*see Compton* Action, Doc. Nos. 73, 76;

---

[2] The *Bonner* Action was brought only in the name of the United States (*see Bonner* Action, Doc. No. 1), while the *Compton* Action was brought in the name of the United States as well as numerous individual states (*see Compton* Action, Doc. No. 1 at 5).  The individual states elected not to intervene. (*See* Doc. No. 80.)

*Bonner* Action, Doc. No. 59).  For the most part, however, the rest of the filings on each docket remained under seal, as did the descriptive docket entries for those filings.

At the direction of the Court, the parties met and conferred about whether the United States or Relators opposed unsealing the remainder of the docket.  (*See generally Compton* Action, Doc. Nos. 83, 110.)  To date, the parties have agreed that the Court should unseal:  (1) all descriptive docket entries on both dockets, and (2) all filings *except* 46 still-sealed briefs filed by the United States in support of its requests for extension of the seal and intervention deadline. (*See Compton* Action, Doc. No. 114 at 3–4 (listing docket numbers).)[3]  ProMedica now moves the Court to unseal those briefs so that they are accessible to Defendants and the public. (*Compton* Action, Doc. No. 115.)  The United States opposes the motion (*Compton* Action, Doc. No. 116), and Relators join that opposition (*Compton* Action, Doc. No. 117).

## II.    DISCUSSION

The FCA prohibits "any person" from "knowingly present[ing], or caus[ing] to be presented, a false of fraudulent claim for payment or approval" and from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A)–(B).  The United States may seek civil penalties against individuals who violate these provisions, *id.* § 3729(a)(1), and private individuals (known as "relators") may bring civil actions in the government's name, *id.* § 3730(b)(1).  When a relator files suit, they must simultaneously send to the government a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." *Id.* § 3730(b)(2).  The United States is then given 60 days to investigate the claim and determine

---

[3] The United States also asks the Court to seal the "recording, if any, of a November 15, 2024 teleconference."  (*Compton* Action Doc. No. 114 at 17.)  The Court is not aware of any such recording.

whether it will elect to intervene and proceed with the action.  *Id.*  During this time, the relator's complaint is sealed and may not be served on the defendant without court authorization.  *Id.* When this 60-day period is insufficient, as it was here, the United States "may, for good cause shown, move the court for extension of the time during which the complaint remains under seal." *Id.* § 3730(b)(3).  "Any such motions may be supported by affidavits or other submissions in camera."  *Id.*

In this consolidated action, the United States filed nearly 50 such motions, each accompanied by a brief outlining why there was good cause for extending the seal while the government finished its investigation.  (*See Compton* Action, Doc. No. 114 at 3–4 (listing docket numbers).)  It is these briefs that ProMedica asks the Court to unseal.  (*See generally Compton* Action, Doc. Nos. 113, 116.)  The United States opposes the motion, arguing that continued sealing of the briefs is required by the FCA, or in the alternative, that the government has overcome the presumption of public access that attaches to judicial records.  (*See generally Compton* Action, Doc. No. 115.)  The Court addresses each issue in turn.

A.      **Sealing Under the FCA**

First, the United States argues that the FCA "require[s] that the government's extension briefs remain under seal."  (*Compton* Action, Doc. No. 114 at 18.)  It notes that the Act requires a demonstration of good cause before the Court can extend the seal and investigatory period, and that to demonstrate the requisite good cause, the government must "typically inform the court of the actions taken or anticipated in furtherance of the government's investigations, the progress made, and the identification of the government agencies and personnel involved."  (*Id.* at 19.) The United States then reasons that because "the purpose of the FCA's seal is to protect the government's investigative processes," and the Act provides that such motions "be filed *in*

*camera*" without any discussion as to whether or when they are to be unsealed, allowing their disclosure now would be contrary to the FCA's text and purpose.  (*Id.* at 19–21.)

Although it is true that nothing in the FCA "directs the court to unseal the motions for enlargement of time filed *in camera*," *U.S. ex rel. Stephens v. Prabhu*, No. 92-653, 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1994), it is equally true that nothing in the Act allows such motions to be sealed indefinitely, a result that would be at odds with the default presumption of public access to judicial filings, *see La Frontera Ctr. Inc. v. United Behavioral Health Inc.*, No. 15cv1164, 2023 WL 66443560, at *5 (E.D. Pa. Oct. 3, 2023) ("The FCA is simply silent as to whether motions for extension of the seal period should eventually be unsealed."); *U.S. ex rel. Kammarayil v. Sterling Ops., Inc.*, No. 15cv1699, 2018 WL 6839747, at *2 (D.D.C. Dec. 31, 2018) ("Absent from the FCA's carefully prescribed schedule for unsealing the *complaint* is any indication as to whether the government 'submissions,' if any, filed in support of the government's 'good cause' requirement for extensions of time, should be unsealed along with the complaint, or remain sealed after the government decides whether to intervene.  Contrary to the government's assertion, the FCA therefore does not 'evince the intent,' much less 'the requirement,' that the memoranda remain under seal."); *see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (discussing presumption of public access and finding it attaches to judicial filings).

And contrary to the United States' suggestion, the reason that qui tam actions are initially filed under seal is not broadly to "protect the government's investigative processes," but instead, to protect the government's specific investigation in each case from being prematurely revealed to the specific defendants being investigated.  *See State Farm Fire & Cas. Co.*, 580 U.S. at 34 (discussing the FCA's legislative history, which "indicates that the seal provision was meant to

5

allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation" (citing S. Rep. No. 99-345, p. 24 (1986))); *La Frontera Ctr. Inc*, 2023 WL 66443560, at *2 (explaining that the purpose of the FCA's sealing provisions is "to prevent tipping off the defendants to an investigation against them").

Accordingly, the Court rejects the United States' suggestion that the FCA requires indefinite sealing of the United States' extension briefs. *See La Frontera Ctr. Inc.*, 2023 WL 66443560, at *4 ("The FCA does not require that extension requests remain sealed after the United States decides whether to intervene."); *cf. U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 401 (E.D. Pa. 2018) ("When the Court lifts the seal on the case, the question of whether or not to keep the seal on any extension requests and other filings is a matter for the court's exercise of discretion.").

**B.     Presumption of Access**

Because nothing in the FCA mandates indefinite sealing, the United States' extension briefs are appropriately considered judicial records to which the right of public access attaches. *See La Frontera Ctr., Inc.*, 2023 WL 6443560, at *8 ("[T]he government's extension requests are squarely part of the judicial record.").[4] Although the presumption in favor of public access is strong, it is not absolute and may be rebutted by a showing that an "interest in secrecy outweighs

---

[4] "A 'judicial record' is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Avandia*, 924 F.3d at 672. Here, although the United States submitted its briefs ex parte and in camera, they were filed on the docket and relied on by the Court in determining whether to grant the United States' motions for extension. Thus, as the majority of district courts have found, they are judicial records and the common law presumption of access attaches. *See, e.g.*, *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 (finding the "more rigorous common law right of access, which 'begins with a presumption in favor of public access'" applied to the government's extension motions (quoting *In re Avandia*, 924 F.3d at 670)); *La Frontera Ctr. Inc.*, 2023 WL 66443560, at *7 (finding that regardless of the test used to determine whether to allow unsealing, "the common law presumption of public access to judicial records applies").

the presumption." *In re Avandia*, 924 F.3d at 672.  To overcome the presumption, the proponent of the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public.  *Id.*; *see also Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 ("In delineating the injury to be prevented, specificity is essential." (quotation marks omitted)).  "Broad allegations of harm, bereft of specific examples or articulated reasoning are insufficient."  *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 (quotation marks omitted).

In the FCA context, "an overwhelming number of district courts apply a balancing test that is unique to unsealing documents in *qui tam* actions—balancing the harm of disclosure with the movant's need for the information."  *La Frontera Ctr. Inc.*, 2023 WL 66443560, at *8; *accord Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5.  This balancing test is, however, "applied against the backdrop of the presumption of access to public records."  *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5.  "Although the Third Circuit has not provided any specific guidance as to requests to unseal government extension requests in an FCA case," courts applying this balancing test have "'in general, lifted the seal on the entire record except for specific documents that (1) reveal confidential investigative methods or techniques; (2) jeopardize and ongoing investigation; or (3) harm non-parties.'"  *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 (quoting *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 401–02 (E.D. Pa. 2018)).  Here, the United States has not shown with specificity that its extension briefs implicate any of these categories, let alone that the harm of disclosure outweighs ProMedica's need for the information or the public's right of access.[5]

---

[5] The United States broadly argues that the Court should deny the motion to unseal because "most filings on the docket have already been unsealed and the United States consents to unsealing most remaining documents." (*Compton* Action, Doc. No. 114 at 8.)  But the public right of access is not

*Harm of Disclosure.* The United States argues that the harm to the government of disclosure is great because the "extension briefs that remain under seal reflect [the government's] investigatory processes," and "[u]nsealing them will chill the future preparation of extension briefs in other cases and will lead the United States to be even-more circumspect about what it reveals to the Court in writing about the course of the government's investigations and decision making." (*Compton* Action, Doc. No. 114 at 10.) But it is not enough for the United States to vaguely claim that the extension briefs reflect the government's "investigatory processes." For one, this general statement about the contents of nearly 50 documents is precisely the type of "broad allegations of harm, bereft of specific examples or articulated reasoning" that courts have found "insufficient." *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 (quotation marks omitted).[6]

And specificity is important in this case because not all investigative techniques are protected. Notably, courts have unsealed similar filings when disclosure would reveal only "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business . . . and contain no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be

---

something the government can negotiate away. Yes, the government has unsealed some of the filings on the docket—filings it concedes are not subject to protection. But it still must show that the right of public access is overcome as to the remaining filings.

[6] For similar reasons, the Court rejects the United States' conclusory assertion that disclosure would be harmful because "extension memoranda regularly contain information that the United States' law enforcement/investigatory files privilege protects." (*Compton* Action, Doc. No. 114 at 19–20 & n.4.) Even if the Court were to accept that "extension memoranda regularly contain [such] information," it does not follow that the extension briefs *in this action* contain privileged information. And notably, although the government cites multiple cases that acknowledge "the law enforcement/investigatory files privilege" as a legal concept (*id.*), it does not cite any cases that found the privilege protects qui tam extension briefs that have been filed on the Court's docket like those at issue here.

utilized or the like." *Id.* (quoting *U.S. ex rel. Health Outcome Techs. v. Hallmark Health Sys., Inc.*, 349 F. Supp. 2d 170, 173–74 (D. Mass. 2004)).  Here, a cursory review of the government's briefs suggests that large portions of each filing do not describe the government's investigation at all, and to the extent any filing does, most of the investigatory techniques discussed in the briefs are just the type of "routine" procedures, which courts have found subject to disclosure.

Take the United States' June 30, 2021 extension brief in the *Compton* Action (Doc. No. 24), which is just over five pages.  The first three pages outline the case's procedural history and explain how the *Compton* action is related to the other, similar qui tams filed in this District.  (*Id.* at 5–7.)  Only three paragraphs—covering a page and a half—discuss the "status of the investigation."  (*Id.* at 7–10.)  And even within this section, the first paragraph lists the agencies assigned to the "government's federal and State investigative team" and is identical to a paragraph included in a publicly available extension request filed by the government in *Sun Healthcare Group, Inc.  See* Civ. Action No. 16cv843, Doc. No. 29-1 at 8 (Dec. 20, 2021).  It is only the second and third paragraphs that describe—in the most general of terms—the steps taken by the investigative team to date and the team's anticipated next steps.  For instance, in the second paragraph, the government notes that the "investigative team has interviewed numerous witnesses in this matter in several states and has a robust list of additional witnesses to interview."  (*Compton* Action, Doc. No. 24 at 8.)  But the government does not identify the number of witnesses interviewed, give their names, specify their locations, or describe the nature of their testimony.  (*See id.*)  Similarly, a few sentences later the government notes that the investigative team is "reviewing and will continue to review rolling productions of documents that defendants made pursuant to a Civil Investigative Demand," but it does not specify the

nature of the documents being produced or their importance to the government's analysis on whether to intervene.  (*Id.*)

In short, these portions of the government's brief do not discuss "confidential investigative methods or techniques," which courts have found warrant indefinite sealing. *Brasher*, 338 F. Supp. 3d at 401–02; *see also, e.g.*, *La Frontera Ctr., Inc.*, 2023 WL 6443560, at *6 (finding the "investigatory information in the subsequent motions is so vague that it cannot possibly be considered confidential" where "none of the extension requests name or otherwise identify any witnesses.  Third-party sources, if any exist, were never revealed," and although the extension requests identify the agencies coordinating in the investigation, they "provide no detail about the extent of their coordination"); *U.S. ex rel. Yannacopolous v. Gen. Dynamics*, 457 F. Supp. 2d 854, 859 (N.D. Ill. 2006) ("[T]he 11 extension requests here contain only general, routine information.  The extension requests here do not contain names of witnesses, information about particular documents or substantive details of the investigation.  Moreover, the information is dated; the most recent extension request at issue was filed [four years before the court's ruling]."); *U.S. v. Aurora Diagnostics, Inc.*, Case No. 16cv21338, 2017 WL 8781118, at *2 (S.D. Fla. Aug. 30, 2017) ("These motions discuss ministerial discovery matters like the number of documents collected, the issuance of a civil investigative demand, the existence of an interview with the Relator.  Courts considering documents containing this information have found that such information does not constitute 'substantive detail' and have not maintained a seal over those documents.").[7]

---

[7] The United States argues that because it has "partially intervened in and is actively litigating the intervened claims . . . disclosure of the government's investigative strategy at this time would be harmful to the United States' interests." (*Compton* Action, Doc. No. 114 at 23.)  The government does not cite any cases in support of this argument or explain why its decision to intervene should alter the analysis. The Court can envision a case where the government's decision to intervene would be a reason for

The Court is also unconvinced by the United States' argument that allowing disclosure in this case will "chill the future preparation of extension briefs in other cases and will lead the United States to be even-more circumspect about what it reveals to the Court in writing about the course of the government's investigations and decision making." (*Compton* Action, Doc. No. 114 at 10.)  As at least one other district court has noted, a "wide-ranging middle ground lays between, on the one hand, an insufficient showing for an extension of time, and on the other hand, a showing so comprehensive and detailed that it prejudices future government investigations if unsealed." *U.S. ex rel. Kammarayil v. Sterling Ops., Inc.*, No. 15cv1699, 2018 WL 6839747, at *5 (D.D.C. Dec. 31, 2018).  It is telling that numerous courts in recent years have ordered the unsealing of similar motions for extension, and yet, the United States has continued to request extensions and demonstrate the necessary good cause.  *See, e.g.*, *id.* ("Thus, the government's future filings will not be 'chilled' because the government will continue to have ample berth to make necessary showings of good cause, even while knowing that these showings may eventually be made available to the relators, which is the only issue before this Court."); *cf. Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *6 (rejecting the government's chilling argument because "such broad allegations of harm, bereft of specific examples or articulated reasoning do not overcome the strong presumption of access to public records" (quotation marks omitted)).

Accordingly, at this point, the United States has not shown the harm of disclosure to be more than minimal.  *See La Frontera Ctr., Inc.*, 2023 WL 6443560, at *8 (finding the

---

redacting portions of the government's brief that go beyond the "routine" or could affect the government's case (e.g., identifying key witnesses by name, analyzing the strength or weaknesses of the relator's claims, discussing the government's anticipated strategy).  But the government has not shown that any extension brief filed in this action contains such information.

government's interest in maintaining the seal to be "miniscule" because the motions did not contain protected information).

***Defendant's Need and the Public's Right.***   Against this minimal showing of harm, the Court must weigh ProMedica's need to access the requested information, while remaining mindful of the presumption of public access.  ProMedica argues that it has a "valid and compelling interest" in the contents of the government's extension briefs because "[t]he information in these filings is necessary for ProMedica to assess potential defenses based on the extraordinary length of time the case was pending under seal, as well as the multiple and substantive amendments to the relator's complaint made during that time."  (*Compton* Action, Doc. No. 113-1 at 9.)  Specifically, ProMedica is "concern[ed] with the procedural history of the litigation, including the apparent 'swapping' of relators in a manner inconsistent with the Federal Rules of Civil Procedure" and the "conduct and timing of the Government's investigative steps in relation to ProMedica's acquisition of HCR ManorCare, without which it would not be a party to this action."  (*Id.* at 8.)  The United States responds that to the extent ProMedica challenges the relator's substitution, that issue only implicates the docket in the *Compton* Action, not the pre-consolidation docket in the *Bonner* Action.  (*Compton* Action, Doc. No. 114 at 9–10.)  And even as to the *Compton* Action, ProMedica's alleged need is inflated because the government is willing to stipulate that:  (1) in the *Compton* Action, no relator ever moved for leave to substitute parties or amend the complaint, and (2) the "first mention of Ms. Compton or of an amended complaint in any government extension brief was in November 2024, shortly after Ms. Compton filed a Second Amended Complaint."  (*Id.*)

Even accounting for the government's willingness to stipulate as to certain issues, the Court finds ProMedica has shown some need for the government's extension briefs.  As

ProMedica notes, to rely purely on the United States' offer to stipulate to certain facts leaves ProMedica trying to "guess at all the potential statutory or procedural violations Relators or Relators' counsel may have committed and wait for the Government to confirm if those guesses are accurate." (*Compton* Action, Doc. No. 116 at 8.)  Given the protracted length of the investigatory period in these matters and the procedural irregularities in the *Compton* Action that have already been identified, the Court agrees that ProMedica's request for disclosure is more than just an unjustifiable "fishing expedition."  For similar reasons, the Court finds the public has a strong interest in understanding the steps the United States took to investigate this matter before electing to intervene and the reasons why it took the government *nearly a decade* to make that election.

* * *

Balancing the harm to the government of disclosure against ProMedica's need for the extension briefs and against "the backdrop of the presumption of access to public records," the Court finds disclosure warranted in this action.  *See, e.g.*, *U.S. ex rel. Yannacopolous v. Gen. Dynamics*, 457 F. Supp. 2d 854, 860 (N.D. Ill. 2006) ("Given the strong interest in public disclosure, Lockheed's stated need for the documents for a potential statute of limitations defense, and the general, innocuous nature of the redacted information, there is no ground for retaining the seal on the documents."); *U.S. ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.*, 349 F. Supp. 2d 170, (D. Mass. 2004) (finding the extension briefs should be unsealed because they "contain no information that could jeopardize the prosecution of this or any related case" and "defendants have a legitimate interest in obtaining the documents because they may be helpful, as defendants suggest, in establishing defenses such as exhaustion of the limitations period or improper venue"); *cf. La Frontera Ctr., Inc.*, 2023 WL 6443560, at *9 ("The United

13

States' interest in keeping the requests sealed is minimal [because] the extension requests do not contain sensitive information.  The government has not shown a significant interest in keeping the requests under seal.  Even before considering the movant's need for the documents, the United States has not overcome the presumption of public access to judicial records.").

Accordingly, ProMedica's motion is granted and the blanket seal on the United States' extension briefs is lifted.  The government will, however, be given an opportunity to redact those portions of the extension briefs that contain "information about specific [investigatory] techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized or the like." *Sun Healthcare Grp., Inc.*, 2024 WL 1640983, at *5 (quotation marks omitted); *see also, e.g.*, *Purcell v. Gilead Sciences, Inc.*, 415 F. Supp. 3d 569, 578 (E.D. Pa. 2019) (lifting blanket seal on the government's requests for extensions but allowing the government to redact portions of its memoranda that "contain specific investigative techniques").

## III.    CONCLUSION

For those reasons, ProMedica's motion to unseal is granted, with the caveat that the United States will be given an opportunity to move for leave to submit redacted briefs before they are made available on the public docket.  An appropriate order follows.